May it please the court, my name is Kevin Hohalter and I am here representing the plaintiff appellant Jose Garcia. There are two issues before the court today. This is a cross appeal. Mr. Garcia's appeal contends that the district court erred in granting summary judgment dismissal of his case under a theory of immunity. Mr. Garcia's claim is under section 1983. He has two claims actually. One is for excessive use of force and the second is for refusal of medical treatment. Did the district court address that latter claim? No, your honor. The refusal of medical treatment claim was not argued in the defendant's summary judgment motion and it was not addressed by the district court in its ruling. And so we believe that remand is necessary in order to correct. So it was a final decision, it just neglected to address one of the claims. Correct, your honor. And we believe because the district court failed to address it and analyze that, that it really didn't make a decision and so that needs to go back for the district court to decide that and City of Hemet and all of that situation. Now your client entered a plea to a couple of charges, right? That is correct. And so we have the delaying, well let me say hypothetically, if your client had entered a plea to a resisting arrest and it was clear that it encompassed the entire event that occurred because I think, I'm sure we've all watched the video many times. But let's say that the resisting arrest, it was clear from the factual predicate that it encompassed everything from when he was like swearing in his cell until when he was taken down and officers would have to be acting lawfully. Correct? Yes. So in that instance, it would be fairly easy to say that there was a heck bar, right? In that instance, yes. Assuming that there was a factual basis in the record that it encompassed the entire event. The entire event. But here what he pled to is we know it was some sort of delay and there were a couple of charges and I wrote down what they are. But it's not specifically, what do we know it covers in this record? Well unfortunately we don't have a factual record that tells us what it covered. We know that he pled guilty to encompass that the officers would have, it would be an element that the officers would have to be acting lawfully. No, Your Honor, it does not. Specifically the obstruction, if we look at Washington law, it's a Washington statute. The statute says a person is guilty of obstructing a law for official powers or duties. The Washington courts have interpreted that and said the statute only requires that an officer be discharging his official powers or duties but it is not necessary that he be doing it lawfully. There is an indication that perhaps bad faith would be a defense to that if the officers were acting in bad faith but I don't think it's necessary to say here that the officers were acting in bad faith. I think that there may be in their minds, you know, they were doing what they thought was proper but that ultimately they were wrong. The amount of force that they exerted was in fact unreasonable or at the very least there's enough evidence, particularly the video, from which a reasonable fact finder could conclude that the use of force was unreasonable. So are you saying this case is more like Hooper than Beats? Your Honor, I didn't review the Hooper case before I came here this morning but I know it's not like Beats. Well Hooper's better for you so you should probably read not only the bad ones for you but the better ones for you. Is it your position that this panel is bound by previous Ninth Circuit decisions like Gibson v. Waschow to apply the Fourth Amendment standard to Garcia's excessive force claim or should we wait till the Supreme Court decides what standard applies to pretrial detainees in the Kingsley v. Hendrickson case where cert was granted? Your Honor, I was not aware of that case. I think that it is perfectly appropriate for this court to go ahead and follow its own precedent that the Fourth Amendment applies but I also don't know if it's necessary to distinguish which of the two tests apply because I think that under either one the action of the officers was unreasonable. Under the Fourth Amendment the trial detainee arrested on an outstanding warrant just like Mr. Garcia and there Lawley presented evidence that he was respectful to the officers and simply asked for his snack because he was diabetic and then the officer grabbed him, pulled him to the ground and then suddenly he was surrounded and being punched and kicked. And what the court said there was that where there is no need or no justification for force then any force at all is unreasonable. Here Garcia by the time Perez arrived by his side he was kneeling in submission, his legs were crossed, his hands were behind his head. He didn't do it right away though. No, he initially was belligerent. Does Garcia concede he jerked away when Officer Perez attempted to cuff him? No, he does not. That's a matter of contention here. The officers I think are relying on their testimony that he jerked away. Is there anything in his testimony that he said he jerked away? His testimony does not directly address that question but the video does. So he does not concede that he jerked away? No, no Your Honor, he does not. Garcia's position is that he was in full submission and compliance with orders when Perez arrived at his side and that then Perez initiated the attack. He grabbed his arm, twisted it, shoved him to the ground when all that was necessary in that case was to go ahead and put some handcuffs on him. Officer Morehouse testified that his only purpose, and this goes to the 14th Amendment standard or the 14th slash 8th Amendment, that his purpose was simply to get Garcia into a cell by himself where he could cool down. That was the penological justification for what he was doing. And so at that point when Garcia is kneeling there in submission, the only thing necessary to accomplish Officer Morehouse's purpose would be to put those handcuffs on and then escort him to a cell. Instead Perez grabs him, twists his arm and shoves him to the ground and then says that after that he jerked away and I felt like I was being threatened. And so he continues to punch and kick and the whole thing escalates. Well it's not easy to handcuff people if they don't want to be handcuffed. So that's... True, but he was in submission. But the question is whether that's a triable issue here. And I think it is. I think that the video viewed in a light favorably to Garcia, which is the standard on a summary judgment motion, a reasonable fact finder could say yeah, he was fully compliant in submission, all Perez needed to do was put handcuffs on him and instead he attacked. No use of force was necessary and so that use of force by Perez was constitutionally unreasonable. I'd like to reserve the rest of my time for rebuttal unless there are questions. Alright, thank you counsel. Thank you, Your Honor. May it please the court and counsel, my name is Rocky Jackson. I represent Corrections Officer Michael Morehouse and Patrol Officer Derek Perez. And I submit to the court that they should not be required to further defend this litigation that the summary judgment granted by the trial court was appropriate. I'll cover briefly four items. First, I will... What about the medical? That wasn't addressed. Does it have to go back for that? I think it would be inefficient to go back to that if... Well, but we can't say legally the court didn't address it, so... Well, you've taken my fourth point and I'll get to it. The medical issue, the plaintiff alleges that he was denied medical treatment. If you look at ER 24 in the record, his own statement is that he was taken for medical treatment and in that same record, his statement is that Sergeant Callahan denied him medical treatment. The record before this court is that within approximately two hours of the incident, Corrections Officer Morehouse took him to the hospital and that's in the plaintiff's pleadings. But isn't there something also in the record that they tried to... that from plaintiff's perspective, obviously, which we have to look at what, you know, give them all inferences, something... They tried to talk him out of... he immediately said he wanted medical care. They tried to talk him out of it and that went on for a while and then finally they took him. And then when they took him, then as soon as... then they took him before there was a review of that he actually had, I guess, a dislocated shoulder and a broken nose, but we don't know... they don't learn about it till... So, I mean, shouldn't the court just look at that? I mean, how can we resolve that here? Well, I think that reasonable minds could not differ that Mr. Garcia's conduct in the holding cell was not one consistent with someone who needed medical treatment. He's kicking the back of the jail door, he's taking his clothes off, he's sliding the handcuffs under his feet from the back to the front, and then he sleeps... sits quietly and or sleeps for a period of time. Those are not consistent with some type of injury. But his verified complaint said that he was taken to the hospital but not seen by a doctor because the officer paid the charges and signed release papers to take him back to the jail. And he was in pain for a week before he was returned to the hospital by a different officer where he then was treated because the CAT scan and the x-rays that were taken from the first visit showed he had a fractured nose and dislocated shoulder. So all of this is in a verified complaint. How can that not raise a material issue of fact? Well, if Mr. Garcia wishes to sue the city of Toppenish or Sergeant Callahan, that might raise a question of fact. But Patrol Officer Perez, he had no authority or any further contact with Mr. Garcia that evening. He went home. He was off duty when he came to the cell to begin with. Well, those were the allegations against Officer Morehouse, and the allegations against Officer Perez were on the excessive force. And Officer Morehouse is the person that took Mr. Garcia to the hospital the very evening of the event. And signed him out before he saw a doctor. That, I'm not sure that's totally correct. That's what the verified complaint says. We have to take that as true. You've been taking that as true. Mr. Garcia's later statement at ER 24 is that he was released from the hospital after he'd been x-rayed and CT scanned, and doesn't mention either way whether there's a doctor or not. But that he had been released back to the population, which was the purpose of... That's not inconsistent. That's not inconsistent with his verified complaint. He was taken to the hospital to obtain release to return to the jail population. He says that he was released because Officer Morehouse signed the release papers before he saw a doctor. And I see your point. I disagree with... I don't think the record shows whether he saw a doctor or not. He was x-rayed, CT scanned, and Officer Morehouse obtained a release from the hospital. Officer Morehouse wouldn't know whether he was seen by the doctor or not. But his verified complaint says that he did not see a doctor. We have to take that as true for purposes of the summary judgment motion. Seeing a doctor or not seeing a doctor would not be within Officer Morehouse's scope. I mean, he just transported him to the facility to seek treatment. If there's some mistreatment because he didn't see a doctor, that's not Officer Morehouse's responsibility. If he removed him from the hospital before the doctor could see him, it would be. If he signed release papers before the doctor came around to see the patient... The papers as I understand them are that Mr. Garcia was released medically to return to the jail. And that Officer Morehouse was acting upon that release that he had been cleared to return to the jail. What in conjunction with where am I pulling out of this that the officer had tried to talk him out of going to the hospital in the first place? Isn't that in the record? That's Sergeant Callahan. I think you're referring to some video during the... It's not in any of the affidavits. It's in the video where Sergeant Callahan is talking to him. And then Sergeant Callahan obtains a paramedic to come in and observe Mr. Garcia. And then following that, he orders Correction Officer Morehouse to take him to the hospital. Let's go to the other part of it because I think that's... I have a question about... Since we can't tell from the record exactly that the convictions don't, as like in Beat, show that the officers had to be... That their behavior was lawful. We can't tell that from what he's convicted of. How can this be... How can this be heck barred? Yes. And I would cite the court to some additional case authority in Washington. Because I think that is a troubling point in the case in terms of the heck issue. And the additional authority is State v. Handren at 113 Washington 2nd, 11 at page 17. Citing State v. Petrick, 101 Washington 2nd, 666 at page 671. State v. Brown at 159 Washington Appellate 1, page 14. And State v. Lopes at 78 Washington Appellate 717, 724. And all of those together, in my mind, establish in Washington that there is a continuing course of conduct coverage. Meaning that when you have inseparable events, and in this particular case, relevant to the question, the inseparable events are Officer Garcia grabbing the arm, attempting to cuff Mr. Garcia. I think I said Garcia. Officer Perez grabbing the arm of Mr. Garcia, attempting to cuff him. And as that motion is occurring, he breaks loose. And the only evidence in this record is Officer Perez's declaration that he broke loose from my hold. And then the rest of the video plays out. Well, except we can look at the video. I mean, we can look at the video. And we also have to deal with Hooper and Beets. And, you know, I was involved with Beets, and I was also involved with the city of Hemet, where I dissented. So that doesn't really, I didn't think that that one should have been parsed out. But here, there's an argument that can be made that the basis for what he was convicted of is, first he uses obscenities when they're turning the lights out and getting off the phone, and the officer seems to think that they're towards him. Then when he comes out, he doesn't immediately comply. You know, he comes out, he's sort of puffing up, and he's a big guy. But he does finally get down on his knees and puts his hands up behind his head and assumes that position. So there's an argument that can be made that all of that conduct could be what he pled guilty to. And then what happened after, it's not the same, what happened after is separate. And if that's the case, it makes it difficult to say that there's not a triable issue, whether he pulled away or whether he was exactly, was he fighting the officer or whatever, or whether he was being compliant. And then he also gets kicked and he gets tased. So there's two different stories of what happened there. I understand that. I would refer the court to ER 52, which is the probable cause affidavit signed by Officer Perez. And he distinguishes between the conduct with Officer Morehouse and then the resisting, I'll call it, Officer Perez. And yet the plea is to two counts. Now, it is difficult because the plea documents aren't here, and most plea documents don't go into specificity of that sort of issue. But a fair reading of the facts is that the conduct of refusing orders or complying with orders of Officer Morehouse all predated, in fact, Officer Perez's entry into the jail cell area. Well, they all did. But if this were a resisting arrest and a conviction of it meant that the officers, that the force that they used was lawful, if that was part of the conviction, then I'm entirely with you on heck. But here, from those documents, we can't tell that. And then there's this whole separate incident where when you look at it, you can't, someone looking at it, you can't tell. The officers say he resisted. You can't tell whether he was compliant or resistant just looking at the video. So you have a triable issue there. But the only evidence before the court on that is the declarations of Morehouse. On the video. On the video. One way to look at the video is he was down on his knees and his hands were behind his head. And then the officer twists his arm and then all chaos breaks loose at that point. And I would direct the court to ER 24 where the plaintiff, Mr. Garcia, indicates that the purpose for Officer Perez coming into the jail was to assist Officer Morehouse in handcuffing Mr. Garcia. With his hands on his head, that was the only purpose of the initial contact by the officer. After the break loose, then it's a question of force. And those facts are not disputed. There's nothing in the record from Plaintiff Garcia that says, I did not arrest. I was compliant. The picture is he went back and he pulls away. There's a separation and then the force is applied. So you're saying that, where in the record does it say that Mr. Garcia concedes that he jerked away from Officer Perez? Where does it say that in the record? Mr. Garcia does not say that in the record, either way. He says nothing because he supplied no affidavit or declaration to the court. And what he did supply states nothing in regard to that issue also. So you basically say that the video, without a doubt, there's only one way to look at the video. I think you look at the video, but what's not shown on the video is the amount of response by Mr. Garcia. In other words, did he jerk away or did he twist his arm and it slipped out? Whatever. All you have in the record, this court has in the record and the trial court had in the record, is the statements of Officer Perez that he was strong, he pulled away from me, Officer Perez felt his safety was at issue and he responded with force. That's all that's in the record. It gets a little bit back to the 56 issue, Rule 56 issue, and that is that the plaintiff, Mr. Garcia, supplies nothing to controvert that. Nothing to controvert that he resisted while he was still on the ground and then subsequently tased. What does his complaint say? Excuse me? What does his complaint say? His complaint says that Officer Perez came in and kicked him, which is not factually what's there. The video disputes that. That he kicked him and that he attacked him. That's all it says. It doesn't go into that issue, which part of the problem is how do we, you know, put the NBA or College Final Four slow motion videotape replay of this whole event. That's not how this should be judged and that's what the Washington case law, the line of cases I cited to you say, you have a continuing course of conduct here. Mr. Garcia wants to argue that for Fourth Amendment purposes, he was compliant, so there was excessive force. But when he looks at Heck, he wants to argue, well, there was noncompliance, so the conviction won't be overturned. You can't have it both ways in this particular situation. Actually, Hooper says you can parse things out, so. And in this particular case, I think it's fair that it's parceled out when Officer Perez comes into the room, attempts the handcuffing, and that's the resisting, obstructing the officer charge, and that's what Mr. Garcia. But we don't know. It's also, obstructing is also not coming out of your cell. It's also not immediately going down to your knees. All of that, that could also satisfy, right? Yes, it could. And that's what we don't know here. And under Washington law, though, there's no requirement to segregate it that way. There's a continuing course of conduct that Plaintiff Garcia undertook, which was all obstructing. So I would ask, I only have 20 seconds, I would ask the court to... Oh, no, you're actually over your time, so could you wind up? I'm sorry? You're actually over your time. You are correct. I see the red light in my apology. Yes, so could you please sum up? I would ask the court to affirm the trial court's ruling and apply the Eighth Amendment, Fourteenth Amendment standard. This is not a Fourth Amendment case. And I would further ask the court that Heck would apply under the continuing conduct argument so that this case should be dismissed and these officers should not have to defend this matter any further. Thank you. All right, thank you, counsel. Rebuttal? Counsel, will you address opposing, do you agree with opposing counsel that this is not a Fourth Amendment case? No, I disagree. I think this is a Fourth Amendment case. I think that the precedent in this circuit is that the Fourth Amendment applies to pretrial detainees. It's true that in the district court it was argued as a Fourteenth-slash-Eighth Amendment issue, but through the research on the appeal, I discovered that was in error. And I believe it would be appropriate for this court to follow its own precedent rather than adding to the confusion that led to the trial court applying the wrong standard. I'd like to spend some time on the Heck doctrine. Counsel argues that Garcia wants it both ways, and I disagree. If we look at the Heck bar... What he's saying is that you didn't put anything into that the record is, that it's unrebutted, the officer's version. That's what he's saying. What is there in the record that rebuts what the officers say, that make it a triable issue? Well, we have to point to the video. The video is there. On a summary judgment motion, the court needs to look at all the evidence that is before it and view it in the light favorable to the nonmoving party. And watching that video, a reasonable fact finder finds that Garcia was in compliance when Perez arrived. So what does your client say happened in this complaint? What does the complaint say? The gist of the complaint is that he came out of the cell, and he got down on the ground, and then he was attacked. So he doesn't address the issue of whether he resisted or not at that point? He doesn't address, he doesn't specifically say, that he did not resist. Is there any deposition in the record on that point? No, Your Honor. There's the verified complaint, and then there is his later written statement in response to the summary judgment. And neither one of those specifically addresses whether or not he resisted. But I think that it's a reasonable inference from what he does say that he did not resist. The way he describes the events is that he eventually came into compliance and was kneeling on the ground and then was attacked. When you say he describes it, it's only the complaint, right? And then the video. It's the complaint, the video. But the complaint's not very specific on what happened there. No, it's not. And so that's why I say it's a reasonable inference from what he does say to conclude that he did not resist. And particularly when viewing the video, a reasonable fact finder could say, yes, he was in compliance and in submission when Perez first made contact with him. At the point where his arm gets jerked and Perez releases, it's not clear from the video whether Garcia pulled away or whether Perez, for some reason, released. He immediately swings his first punch after releasing. And so it's hard to say whether Garcia pulled away or whether Perez just decided I'm going to let go and punch this guy. And so a reasonable fact finder, it's a triable issue, as Your Honor said before. Now, as to the heck doctrine, there are two reasons why Garcia's claim does not necessarily imply the invalidity of the obstruction conviction. One, which has been discussed, is that Garcia's claim involves different conduct from the obstruction. It's possible that the obstruction dealt with only his resistance prior to getting down on his knees and hands on his head. And then Garcia's claim of unreasonable force happens after. And so there's no necessary conflict. The second possibility is that as other circuits have held, in an unreasonable force situation, the force that is applied may have been out of proportion to the criminal conduct. And so if this force was out of proportion to Garcia's obstruction, even assuming that he pulled away and that that was part of the obstruction, if the force used was too much, and that's how Garcia eventually prevails on his claim, that doesn't invalidate the conviction for obstruction. I've used up my time, so I will close. The district court did not apply the proper standard of summary judgment. It accepted the officer's testimony instead of viewing the video in the light favorable to Garcia. Because a reasonable fact finder could find in Garcia's favor, we ask the court to reverse. All right, thank you, counsel. Thank you to both counsel. On behalf of the court, we'd like to especially thank Attorney Hocalta for appearing pro bono on behalf of the plaintiff that this case is submitted for decision by the court.
judges: Fernandez, Rawlinson, Callahan